**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TENEE DANISE CRITON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:19-cv-01530-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Tenee Danise Criton ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Doc. Nos. 6, 8, 21.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 6, 2016. AR 230-36, 237.[2] Plaintiff alleged that she became disabled on May 26, 2016, due to pain in both knees, difficulty walking, and arthritis in knees. AR 112. Plaintiff's application was denied initially and on reconsideration. AR 112, 122. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Shiva Bozarth held a hearing on July 25, 2018, and issued an order denying benefits on October 24, 2018. AR 39-69, 25-32. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 4-6. This appeal followed.

### Hearing Testimony

The ALJ held a hearing on July 25, 2018, in Fresno, California. Plaintiff appeared with his attorney, Mr. Putnich. Robert A. Raschke, an impartial vocational expert, also appeared. AR 39.

Plaintiff testified that the last time she worked was May 2016. AR 44. She also testified that she was taking care of a friend's house for room and board after she stopped working. AR 44. Plaintiff testified that before May 2016 she worked for Volunteers for America delivering food to schools. AR 44-45. Plaintiff was lifting about 45 pounds on an average day in that position. AR 45. Plaintiff then began delivering food to homeless shelters with the same company. AR 46. She then began working in the company's veterans housing. AR 46. In that position, Plaintiff was required to check who was on the property. AR 46. The property had a lot of stairs and hills. AR 46. Plaintiff was only able to work in that position for one day. AR 48.

Plaintiff testified that prior to working for Volunteers for America, she was working for Skid Row Development as a desk clerk. AR 48. In that position, Plaintiff would need to patrol the floors of the facilities and spent about 10 to 15 minutes of every hour on her feet. AR 49. Prior to working as a desk clerk, Plaintiff testified that she worked as a security officer for retail stores. AR 50. As a security

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

officer Plaintiff was on her feet all day. AR 51. Plaintiff further testified to working as temporarily for FedEx and for a temp agency shuttling workers to and from work. AR 52. Plaintiff testified that she has completed trade school and one year of community college. AR 52.

Plaintiff testified that she had left knee surgery and there is a planned right knee surgery. AR 53.

Plaintiff testified that she lives in a one-bedroom apartment on the ground floor. AR 52-53. She is able to clean the apartment by herself and make her own meals. AR 53. Plaintiff testified she is able to drive. AR 53. Plaintiff is able to grocery shop by herself, she prefers to use the motorized carts but can use a regular cart if she takes it slow. AR 54.

Plaintiff testified that she has fallen twice and was unable to get up. AR 55. One fall occurred prior to surgery and the other prior to obtaining an MRI. AR 55. Plaintiff testified that when she falls, she is unable to get up on her own. AR 56. Plaintiff testified to using a walker after surgery, and then a cane everywhere she goes. AR 56. Using her cane, Plaintiff is able to walk about half a block before needing to stop and rest. AR 57. Plaintiff uses walls and furniture to support her in her apartment. AR 56.

In response to questions from his attorney, Plaintiff testified that she had her left knee surgery in 2017. AR 57. Plaintiff testified that her knee does not feel completely stable following her surgery, she continues to have pain, but it is less than before surgery. AR 57-58. Plaintiff also testified that she is 5 feet 7 inches tall and weighs 301 lbs. AR 58.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Robert A. Raschke.  The VE characterized Plaintiff's past work as light to medium exertion, semi-skilled, SVP 3. AR 60. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and past work experience. The ALJ also asked the VE to assume an individual who can lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk at least two hours out of eight and sit for at least six hours out of eight. AR 60. The VE testified that this individual would be unable to perform the claimant's past work. AR 61.  The VE also testified that there would be other work in the national economy that such

an individual could perform at a light or sedentary level.  At the light or sedentary level, with sit stand options, there would be positions such as small products assembler, collator, and packer.  AR 61-63.

For the second hypothetical, the ALJ asked the VE to take hypothetical one but that individual would need to use a cane to stand more than 30 minutes, or to ambulate for more than 30 minutes or across uneven terrain. AR 63.  The VE testified that this change would allow the three identified jobs. AR 63.

For the third hypothetical, the ALJ asked the VE to assume an individual who can lift or carry ten pounds occasionally, less than ten pounds frequently, can stand or walk two out of eight hours, and can sit for at least six hours out of eight. The individual would need to use a cane, to stand for more than 30 minutes, or to ambulate for more than 30 minutes, or across uneven terrain. The individual would only be able to occasionally climb stairs and ramps, never climb ladders, ropes, or scaffold, only occasionally crouch, kneel, or crawl. The individual could not work at unprotected heights or around dangerous machinery. AR 65-66. The VE testified that there would be work in the national economy that such an individual could perform at a sedentary level.  At the sedentary level, there would be positions such as call out operator, addresser, and lens-block gauger.  AR 61-63.

For the third hypothetical, the ALJ asked the VE to assume an individual who needs two, 15-minute breaks, in addition to those breaks normally and regularly scheduled throughout the day. AR 66. The VE testified that such an individual would not be employable. AR 66.

For the final hypothetical, the ALJ asked the VE to consider an individual who was unable to stand or walk without the use of a cane, could only occasionally climb stairs or ramps, only occasionally stoop or balance, could never kneel, crouch, or crawl. AR 67. The VE testified that the identified jobs would be reduced by half.  AR 67-68.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

///

///

4

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 25-32. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 25, 2016, the alleged onset date. AR 27. The ALJ identified bilateral meniscus tears and obesity as severe impairments. AR 27. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 27.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk two hours and sit six hours in an eight-hour workday, and she needs a cane to stand for more than 30 minutes and to ambulate across uneven terrain. AR 28-31. With this RFC, the ALJ found that Plaintiff could not perform her past relevant work as a security guard, receptionist, and delivery driver. AR 31. Alternatively, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as small product assembler, collator, and cleaner polisher. AR 31-32. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff contends that the ALJ erred by (1) improperly evaluating opinion evidence from Plaintiff's treating source, Erin Crosbie, NP; and (2) relying on outdated, speculative opinions of non-examining physicians, rather than appropriately supported medical opinion evidence.

**A. The ALJ Did Not Err in Evaluating the Opinion Evidence from Treating Source Nurse Practitioner Erin Crosbie.**

Plaintiff first argues that the ALJ failed to properly evaluate the opinion of her treating provider, Erin Crosbie, NP. Specifically, Plaintiff contends that the ALJ rejected the greater limitations provided in Ms. Crosbie's opinion, but failed to articulate any germane reason for doing so. (Doc. No. 17 at 10.) The Court disagrees.

On February 3, 2017, NP Crosbie completed a form in connection with Plaintiff's applications. In a check-the-box form, NP Crosbie opined that Plaintiff could occasionally lift and carry 50 pounds,

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

could frequently lift or carry 25 pounds, could stand and walk for a maximum of 2 hours, with normal breaks, in an eight-hour workday, and could sit for a maximum of 2 hours, with normal breaks, during an eight-hour workday. AR 738.  She could sit no longer than 20 minutes and stand no longer than 10 minutes before changing position. AR 738. She should avoid concentrated exposure to wetness and humidity, avoid even moderate exposure to extreme cold and extreme heat, and avoid all exposure to hazards. AR 739. NP Crosbie opined that extreme temperatures exacerbate Plaintiff's knee pain and she should avoid exposure to hazards because her knee pain makes Plaintiff unstable. AR 739. NP Crosbie further opined that Plaintiff needs to use a cane to walk, she cannot crawl, and her balance is compromised. AR 739. Finally, NP Crosbie opined that Plaintiff would be absent from work more than three times a month due to her impairments or treatment. AR 739.

At the time Plaintiff's claim was filed, the opinions of nurse practitioners as treating sources were not given the same weight as physicians' opinions. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017). Under the regulations then-applicable to Plaintiff's claims, NP Crosbie is not an "acceptable medical source," but rather an "other source."  *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (acceptable medical sources are generally limited to physicians and other qualified specialists); 20 C.F.R. 404.1513(d) (effective September 3, 2013 to March 26, 2017) ("other sources" include nurse practitioners and physicians' assistants).  Although required to consider evidence from "other sources," an ALJ may discount testimony from these other sources by providing reasons "germane to each witness for doing so." *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ assigned NP Crosbie's opinion "some weight" finding that the limitations on lifting, standing, and walking was warranted by the record, however, despite the Plaintiff's knee pain, she should be able to sit for six hours in an eight-hour workday, and the environmental limitations were not warranted by the record. AR 30. The ALJ further found that NP Crosbie's opinion was given prior to Plaintiff's knee surgery. AR 30. The ALJ may reject the competent testimony of "other medical sources" if it is inconsistent with evidence in the record or if it is contradicted by another medical specialist. *Dale*, 823 F.3d at 944–45; *Molina*, 674 F.3d at 1111; *see also Shorter v. Saul*, 777 Fed.App'x 209, 211 (9th Cir. 2019) (finding ALJ properly rejected other source opinion of nurse

practitioner based on inconsistency with objective medical evidence, including treatment notes showing largely unremarkable examinations and findings of improvement with medication).

According to the record, Plaintiff received consultative exams around the same time from Dr. Vaghaiwalla and Dr. Han. AR 80-89, 92-100. On August 3, 2016, Dr. Vaghaiwalla opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. AR 86. Dr. Vaghaiwalla also opined that Plaintiff could stand and/or walk (with normal breaks) for a total of two hours and sit (with normal breaks) about six hours in an eight-hour workday. AR 86. Finally. Dr. Vaghaiwalla opined that Plaintiff could perform sedentary work. AR 88. On November 9, 2016, Dr. Han opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. AR 97-98. Dr. Han also opined that Plaintiff could stand and/or walk (with normal breaks) for a total of two hours and sit (with normal breaks) about six hours in an eight-hour workday. AR 98.

Further, following Plaintiff's surgery, on March 5, 2018, Martha Moreno, M.D. opined that Plaintiff's knee pain intermittent and improving. AR 657. Dr. Moreno further opined that the pain was aggravated by climbing and descending stairs, walking, and standing, but was relieved by rest and ice. AR 657. Dr. Moreno also observed that the Plaintiff noted that since her surgery she has had continued stiffness, but pain was improving. AR 657. Dr. Moreno additionally observed that Plaintiff had left knee tenderness and mild pain with motion, and right knee tenderness with moderate pain with motion. AR 658.

The ALJ noted that he granted Dr. Vaghaiwalla's and Dr. Han's opinions significant weight as they were consistent with the overall record. AR 31. Further, the ALJ noted that Plaintiff appeared to be doing well after surgery and has not been fully compliant with her prescribed treatment. AR 31. As noted, NP Crosbie opined greater limitations prior to surgery for Plaintiff when sitting and when exposed to hazards. The opinions of Dr. Vaghaiwalla and Dr. Han are otherwise consistent. The ALJ found that there was little support in the record as a whole to support the further limitations suggested by NP Crosbie. AR 30. Accordingly, the Court finds that the ALJ provided sufficiently germane reasons for discounting the opinion of NP Crosbie.

**B. The ALJ Properly Evaluated the Medical Opinion Evidence in Making the RFC Determination.**

Plaintiff argues that the ALJ erred by failing to obtain a medical opinion from a source who considered all relevant evidence and Plaintiff's RFC for at least a durational period of 12 months. (Doc. No. 17 at 12.) This argument lacks merit.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). Indeed, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment." *Holcomb v. Comm'r Soc. Sec.,* No. 2:17-cv-02268-KJM-CKD, 2019 WL 176266, at *4 (E.D. Cal. Jan. 11, 2019) (citing *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)).

The ALJ's determination of a claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b).

Here, the ALJ cited medical evidence and treatment records to support her RFC finding that Plaintiff could perform light work. In so doing, the ALJ acknowledged and granted some weight to the opinion of NP Crosbie. NP Crosbie opined higher limitations than those opined by the consultative examiners, Dr. Vaghaiwalla and Dr. Han, which the ALJ found was inconsistent with the record as a whole. AR 30-31. Further, NP Crosbie opined that Plaintiff was able to lift and carry more weight than opined by the consultative examiners. AR 30. The ALJ stated germane reasons for granting NP Crosbie's opinion some weight as detailed above. The ALJ also granted significant weight to the opinions of consultative examiners Dr. Vaghaiwalla and Dr. Han, finding that the opinions were consistent with the record. AR 31. The opinions are in fact consistent with the record. They only vary

slightly from NP Crosbie's opinion in that they opined greater limitations on lifting and carrying and no limitations on sitting. There are no other opinions from acceptable medical sources in the record. The opinions are also consistent with Plaintiff's own testimony.

In addition to citing records demonstrating Plaintiff's functional capacity, the Plaintiff's testimony supports Plaintiff's condition improved post-surgery. Plaintiff testified that while she remains limited by pain, she is able to walk half a block with her cane, cook, do housework, and grocery shop without a motorized cart if necessary. AR 52-58. Further Plaintiff testified herself that her pain and function has improved since surgery. AR 57-58. This is also supported by medical records from Dr. Moreno. In March 2018, Plaintiff first sought treatment with Dr. Moreno. AR 656. Dr. Moreno observed that Plaintiff's pain after surgery was intermittent and improving. AR 657. Based on Plaintiff's improved condition, the higher limitations opined by the consultative examiners would then be even greater limitations than those actually experienced by Plaintiff. The ALJ's RFC determination is supported by the record as a whole and by Plaintiff's improved functions.

Plaintiff in addition appears to be arguing that the ALJ had a duty to further develop the record. "In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered[.]" *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ's duty to "develop the record further" is triggered only where evidence is ambiguous, or the record is inadequate to allow for proper evaluation of the evidence. Id.at 459-60; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Plaintiff contends that, because the ALJ granted significant weight to opinions that took place prior to Plaintiff's MRI and subsequent knee surgery, the ALJ relied on speculative and outdated opinions. (Doc. No. 17 at 12.) However, the burden is on the claimant to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from an examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, 2009 WL

10

2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation.

Further, the ALJ's obligation to obtain additional evidence is triggered only "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence). The ALJ did not fail to consider all of the medical evidence in making the RFC determination. As detailed above the ALJ acknowledge and granted weight to not only the consultative examiners but also the treating source, NP Crosbie. The ALJ also acknowledged Plaintiff's own testimony regarding her abilities and pain. Plaintiff has not identified that there is ambiguity or inadequacy in the medical evidence. Further, it is Plaintiff's burden to produce evidence of disability, not the ALJ. Without a showing that the medical records were ambiguous or inadequate, the ALJ does not have a duty to develop the record further.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Tenee Criton.

IT IS SO ORDERED.

Dated: **March 5, 2021**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE

11